Council we're ready to hear you. May it please the court, I'm Barry Roseman with co-counsel Lisa Sally. We represent Christine Frappier and the other eight individuals, planets in this case. We're going to be splitting our time. I'm sorry? Frappier? Frappier. Thank you. Our clients are nine employees, former employees of casinos in Black Hawk, Colorado, who were fired within the first 90 days after another company took over the operation of those casinos and were terminated in a way that disproportionately and negatively affected older female employees at the casino. Can we pause there because it's been a little bit frustrating trying to track the numbers from the complaint to the other pleadings as far as how many of each category and so forth. And so maybe you could just pause. 113 employees, is that right? I believe so. And 60 of them were not renewed after the 90-day probationary. Is that right? Approximately 60. 33 females, 27 males. Right. Now break it down into how many males over 40 as a were not renewed or were terminated. That's on page 28 of our opening brief. Now that's in terms of the age breakdown, in terms of how many were retained, how many were not. We also have statistics in the report of Andy Bardwell. Well do you agree the numbers have been bouncing around from the time of the complaint until the pleading at the briefing and so forth? I'm just trying to get my hands around. What are the numbers? The numbers are approximately 60 as you pointed out. Of those 60, roughly 30 were over the age of 40. Why are we roughly? Well we have 31 and 29. It's on page 28. Okay that's a different number than I've seen. I've seen 33 and 27. Yeah I mean the problem we drafted the Third Amendment complaint is we did not have full access to the information. We got that through I'm asking now what what is the final tally and the percentages over 40 and so forth? Need that to measure and to compare the females over 40 and the males over 40. And right now it's just kind of a guessing game for me at least. Yeah the percentages are I mean again I the the detailed statistics are in Dr. Bardwell's report but he found that there was a statistically significant disparity between older women in terms of their retention rate and younger women and also in terms of men both older and younger men. I mean I have the statistics are in the record and I haven't memorized those statistics. The the key factor in the case is whether or not or at least one of the key issues is whether the courts will recognize a claim under Title VII for discrimination against older women. That's a straight-up legal question. I think the facts are in the complaint and we adequately allege them and put them forward. There are two ways of looking at that issue. One is the way that Judge Moore did which is to say that what we're trying to do is to cobble together a claim based on two different statutes in a way that was not intended by Congress. The other way which is the correct way is to view this as really being an extension of already existing law that's been in fact recognized for over close to half a century of prohibiting discrimination because of sex plus another characteristic. In Phillips versus Martin Marietta it was discrimination against women who had preschool age children. In Lamb. That was sex plus another characteristic that wasn't protected by a federal statute. I'm sorry? That was discrimination sex plus a covered by another statutory scheme like the ADA. So that's not really comparable. Well it is comparable because as the district court in Arnett pointed out whether or not it's covered by a different statute is irrelevant. I think it is very relevant. That other statute provides for different I mean different damages, different terms of a different essentially evidentiary standard. There's all kinds of distinctions that limit the relief under the ADA that aren't necessarily present under Title VII. Why isn't that relevant when you're trying to combine now the two under Title VII? Because when you look at apply the Title VII's for a number of standards. For example the 39 year old female plaintiff and we had was Jennifer Ryan. Such a plaintiff would be able to bring a sex plus age discrimination claim because she's not 40 years of age. She's not covered by the statute. So under the Judge Moore's decision that plaintiff would not have any claim for sex plus age discrimination once she reaches age 40. It would mean that because Congress has enacted a statute that specifically protects her because of age she cannot bring a claim that she could have brought a year before. But isn't that Congress's duty to fill? If there's a loophole should we be acting to fill that loophole? Well Congress has provided a separate statutory scheme. Is it up to this court to say well there's there's there's some there's holes in that and this may be a hole. But Judge Moritz with all respect we submit there is no loophole. Congress did you know. I think you used that language. I'm sorry. I thought you'd use that language in your brief several times. Well there is no legislative history. Nothing indicating that Congress intended to deny protections to older women because when it enacted two different statutes. That defies logic that when Congress enacts a statute with specific protections that means that person has less protection than she would have had earlier. It means that I mean if you take this logic Congress enacted these statutes in the late 1960s in the middle of the Great Society when they were trying to protect individuals from discrimination. And again there's nothing in terms of logic or in terms of legislative history to indicate that Congress did not intend to cover that particular group of people and to make it unlawful to discriminate against them. There's certainly all kinds of evidence that Congress intended that an age discrimination claim be brought under the ADA under the standards that apply to the ADA not under Title 7 and the standards that apply to Title 7. The reason again you have to go back into the into the history. The reason why there are two different statutes as far as we can determine is because Congress decided that it wanted to have the ADEA enforced at least originally by the Wage and Hour Division of the Department of Labor. And as a result that led to different remedies then there were the 1991 amendments to Title 7 and none of this is there any indication that Congress said well by enacting this we are leaving a loophole where we do not intend to protect older women. In fact the evidence if anything is strongest that Congress intended to protect older women along with younger women and to prohibit discrimination because a person reached that age just as a intended to protect women who are single or women who become married or women who have children of a certain age which is a form of age discrimination in reverse. That that same logic applies to this situation. It would have been it would have been unlawful to discriminate against older women before the ADEA was enacted. So to say that by enacting a statute that protects older employees then intent Congress intended not to absurd result where people who need the protection of law as shown by academic studies and as shown by the cases do not have those protections. And that's why we submit that the court should recognize this type of claim. I'd like to reserve the balance of our opening of my opening to my co-counsel for discussing the summary judgment. Good morning your honors. I am addressing the summary judgment motion but I'm happy to answer any questions the court may have on any of the issues. I want to touch just briefly on summary judgment on the prima facie standard that was applied and the court's rejection of the statistical evidence that we provided at the fourth element of the prima facie case under the ADEA to raise the inference that age was a factor. And the provided that the median, which showed I'm sorry, that the median ages of the individuals who were fired is 10 years, anywhere from 10 years to 20 plus years different than the individuals who replaced them. I notice in the defendant's brief they said well you're just pulling people out of thin air you're not talking about people in the same groups. So I would briefly refer the tables at pages 2287 to 2290 of the record and specifically just quickly let you know that 2287 compares the table games dealers who were fired including two of the plaintiffs and the first 11 table games dealers who were hired to Page 2288 is the same for the cage department which included four of our clients, initially three currently, and the first five individuals who were hired to replace the cage cashiers. 2289 is the casino hosts there were only two of those. Kathy Green the plaintiff was fired and she was replaced by a much younger person. And finally 2290 is the food and beverage workers, three of those being the plaintiffs and they're replaced, the first three individuals hired to replace them. Because this case doesn't involve the one-to-one replacement but a group termination followed by hiring in groups. It was never posed as a RIF. We're not going to eliminate these positions although there's some testimony to the contrary but that's the consensus by the company and the company's position. We can't do the one-on-one this plaintiff was replaced by this new hire and so you have to use something like averages or median ages. And on this issue what I'd like to point the court to is Lester versus Vilsack which says it's okay to use statistical evidence to state that fourth factor under the prima facie case. And a Tenth Circuit case Zuniga versus Boeing not cited in the briefs at 133 Federal Appendix 570 it's a Tenth Circuit case. This court reversed the trial court's rejection of very similar evidence. In that case the plaintiff had sought to present evidence that 75% of the people who were let go in this layoff process were age 55 or older and the trial court rejected that. The Tenth Circuit said no. A jury could infer from that that there was an age bias in this. And because statistics are available at both the prima are available to demonstrate age bias at both the prima facies I can't think of the word prima facies stage and at the pretext stage there's no reason to exclude it just because we're we're offering it on the fourth. When you use the word median a statistical term what do you mean by that? Well the median is you let's say you have 20 people the median would be the it's easier with 11 you know the median would be the middle person. It's slightly more accurate in this sense that if we used averages and instead and you had one person who was either significantly younger or So we chose median and in the Lester I'm sorry in the Luban case it's not a Tenth Circuit case cited in the briefs that court held that using median ages which showed a seven-year difference was sufficient to make it more likely that age was a factor. Can you I'm a little bit confused on your argument can you distinguish for me on your on your disparate impact case what your argument is on on the prima facie case versus spirit treatment? Can you be more specific because I could go so many directions. Okay well let's say let's talk about disparate treatment. Okay. I thought I thought I understood your argument to be that all they really need to show on that fourth prong is that is that their jobs weren't eliminated. That's the Kendrick standard and we we do argue. So is this an alternative argument you're making today? I mean rather than argue about which standard the court should have applied what we argued is yeah the court could have and should have applied the Kendrick standard but even you don't need statistics under that standard right? No not at all. Right so this argument you're making is is supplemental in the sense that. It's the fallback argument. Right I just want to make that clear. Okay. Thank you. Because you started with it and you didn't make that preliminary argument which I think is an interesting argument. Thank you. Yeah this is our time for you I think. Correct? Correct. Thank you. Good morning may it please the court Josh Kirkpatrick of Littler Mendelsohn appearing on behalf of respondent and defendant Affinity Gaming Blackhawk. There's a reason that no circuit court has ever blessed the conflation of subclasses protected under separate statutes. Here the title 7 and the ADEA but it could also be any two other federal statutes prohibiting discrimination. To your point Judge Moritz these are different statutes. Congress could have amended title 7 to include age as it did when it passed the Pregnancy Discrimination Act in 1978 saying pregnancy discrimination is a form of gender discrimination that's protected by title 7. Instead in 1967 Congress passed the Age Discrimination in Employment Act. They have different standards and different remedies. The Grossby FBL case went into great depth about this and the fact that 42 USC section 2000 e2m has a motivating factor standard under title 7. The ADEA despite the fact that it included some amendments around the same time was not similarly amended and continues to use the language because of such individual's age. The Gross case now that you mentioned that does have different did did outline the different standards but it didn't really discuss the prima facie it didn't change the prima facie case did it that has to be made under the ADEA? Gross did not specifically address the prima facie case standard but. So why doesn't Kendrick still apply? Kendrick and the two other cases that were similar around the same time English and what was the other one there was one other there's a trio of cases in 1999 2000 and 2001 that talked about this issue at the prima facie case stage on summary judgment as involving merely that the position was not remained open following somebody's separation. The more recent cases have moved away from that including some opinions from the Tenth Circuit. Bennett v. Windstream Communications Inc. 2015 case from the Tenth Circuit required as part of the prima facie case that the challenged action occurred under circumstances giving rise to an inference of discrimination. Jones v. Oklahoma City Public Schools 2010 case from you Judge Lucero required as the fourth prong of the prima facie case that the female plaintiff established that quote she was treated less favorably than others not in the protected class. The same prima facie case standard was articulated in the 2012 case Kalik v. United Airlines. So the more recent cases have all required something more than a mere presentation that a position remained open which makes sense. Although we've never we've never said anything about I think it's DePaula and Perry where we were pretty clearly said you can you can establish that fourth element by just showing the positions remain open we've never said otherwise either. It is a fact that the fourth stage requires but I think it is appropriate in light of gross v. FBL that there should be required something more than a presentation that a job remained open. Why don't their statistics meet that then? What's that? Why don't their statistics meet that? This is a motion to dismiss and and they presented the numbers at least in their in their complaint. The way they did the math with the numbers may not be in the complaint but it's a motion to dismiss. I guess I'm questioning. They haven't had a chance to do the discovery. I guess I'm questioning the prima facie case standard verse at the motion to dismiss stage which resulted in the dismissal of the sex plus age claims or are you addressing the summer judgment motion? I'm talking about the age discrimination, disparate impact. Okay the the disparate impact age claim I think the problem with that claim and again we're talking about disparate impact that was claim three that was dismissed on the rule 12 motion. The district court analyzed the third amended complaint. Again plaintiff had plenty of time to get the numbers straight and to your point Judge Phillips that presentation left quite a bit to be desired. Plaintiffs now point to a chart that they contend is based on paragraphs 34 to 35 of the third amended complaint. That those allegations plainly pertain to the sex plus age claim and the chart looks the chart was nowhere in the complaint. The motion to dismiss it's not the job of the district court to try to perform some mathematics and and gymnastics to back age statistics out of a sex plus age statistical presentation. Can I ask you to move on to pretext unless that that's all right with my colleagues to discuss the pretext issue? Yeah I'd be happy to discuss pretext. Okay just one question. Sure thing. Is this a case of first impression at the circuit court level? It is no circuit court has actually adopted if you're talking about the sex plus age issue then it is the case that no circuit court has. You can state it in the positive or the negative I don't realize. I don't want to play in word games. I just want to know is it a case of first impression at the circuit court level? Other circuit courts without extensively addressing the issue have found no error with district court decisions failing to recognize sex plus age claims. What has the court said on the topic? This court has said nothing on the topic. There's there's one there's one case Rigel holds. The court? The court the United States Supreme Court has said nothing on this topic. There's this contention obviously throughout the briefs of plaintiffs and the amici that the US Supreme Court has condoned these types of claims by authorizing sex plus claims but to your point Judge Moritz it's a different situation when you're trying to combine age with sex as opposed to sex plus some other category protected by Title VII. Should I turn to the pretext? Yes and I guess I have a couple of questions that I was hoping you could get to. Do I understand correctly that when you take took over the casino you basically said to all these folks you're all new hires you've got a 90-day probationary period and we're gonna watch you and monitor you closely during this period and at the end of that period basically they understand there there's maybe going to be a decision made presumably but did you tell any of these folks that you're gonna evaluate them as new hires based on their past performance eventually and and my second part of the question is when you terminated all these folks did you tell them that that my understanding is you told them all you didn't pass the probationary period which would imply something happened during the probationary period not that they were going to be terminated based on their past performance. I don't know that it does imply that your honor I mean what we you know we took over an existing operation the the managers from the prior operation became the managers for affinity and as such they had knowledge of the historical performance of these workers and it would have you know frankly been a disservice for them to say we're going we must blind ourselves to what we know about whether you're a good employee or not and you've got a fresh start you know what you were on the third step of a disciplinary action you're you know if you were tardy one more time you were going to be fired but congratulations your slate is wiped clean. It's appropriate for these managers to have relied on what they know about these employees and for them to have relied on past discipline in deciding whether I'm asking did you tell the employees that because that's not that's not what it sounds like that they were not and they weren't told that when they were terminated they were terminated because they didn't pass the probationary period what should that have meant to them that somebody reviewed their personnel file some unnamed person reviewed their personnel file and they were being terminated based on past performance respectfully your honor this is no different than would occur in any large-scale layoff employees are not sat down and you know having you know half-hour meetings about well I'm asking what you told them they were they were I'm asking what you told them because that's very important at summary judgment stage what the employees were told when they were terminated and here they were told that they didn't pass the probationary period that's right they didn't pass then when you get to the EEOC suddenly it's not just that they didn't pass the probationary period you tell the EEOC why here's all this information from their personnel files we didn't mention this to them but here's the reason that each of these people were fired correct well they didn't pass the introductory period because of the issue they weren't told that is my point and doesn't that create a question of fact about what your true motivation was I don't believe so your honor there's never been any change in our motivation there's never been any shifting theories about why people were terminated the fact that someone did you know again didn't pass the introductory period there are reasons set forth on the appendix those reasons have never changed and in fact plaintiffs having all the data just asking I think it's very important what they were told sure what they expected during this probationary period what they expected the probationary period to mean what they were told when they were fired about the reasons for their termination and then what your position became later and I'm struggling with that sure and respectfully your honor what they were told I don't think has a bearing on whether there was discrimination here again they were told you didn't pass the introductory period we had reasons for concluding that they didn't pass the introductory we have many cases saying that when the employer identifies one reason to the employee at termination and then provides new reasons to the EEOC or during litigation that that may be evidence well that we'll get we'll get get you past summary judgment it may not ultimately sure make the case but it's certainly a factor that we would consider right and I and I dress distinction between new reasons and different reasons again the reasons have never changed here when called on to provide more detail the company was able to do so and the detail that the company provided was entirely consistent with what was told to the employees at the time which is that they didn't pass the 90-day introductory period that's right for various reasons relating to poor they weren't told that though is there any evidence they were specifically told oh by the way this relates to your past performance nothing yeah no again that's what I'm asking they were given a consistent message as any employer does to its employees in a large-scale layoff the other reasons for pretext again there's this allegation of disturbing procedural irregularities which is what you just highlighted the fact that employees weren't expressly informed that we would be looking at the entire body of their work which I respectfully I don't think establishes pretext there's also a claim of selective enforcement and it's important to bear in mind here that plaintiffs were provided in discovery with disciplinary records on all of the other employees in their job positions and the best example they could come up with is that cashier George and labute who had two incidents of improper use of a cell phone and a negative comment to a customer they try to compare her with a bartender somebody in a different position named Rosemary Montoya who over served a co-worker the fact that that's their argument on selective enforcement that's the best they could do so obviously they took the you know what they view as the least quantum of discipline associated with any plaintiff and the worst thing that any non plaintiff did and try to compare those two is pretty telling in terms of the fact that there was no selective enforcement here there's also a comment that we affinity employed subjective criteria that there were to be sure they were objective and subjective criteria but the cases make clear that there's no in subjective criteria in and of themselves are not evil it's only where you can show that subjective criteria were applied in a discriminatory way well the problem that they had here is that the employees were only told one thing which is they didn't pass the probationary period and your various department heads when they testified either couldn't remember or didn't or said that you know I didn't I don't know why these individual employees were terminated and they certainly didn't say well I reviewed their prior personnel file and despite nothing during a probationary period I decided that there's nothing like that here and again I don't know exactly there's no testimony from individual supervisors about what the rationale was I would urge the court in the fact that it was a group layoff doesn't change the need for that that's true but we at the end of the day we were able to articulate the reasons that these selections were made I'm saying that came from a file that came from a list here's a list to the EEOC of various information in the employees files where is the deposition testimony or or something that backs that up that some supervisor actually reviewed that personnel file and despite what they said to the employee terminated them for their prior performance sure I think a lot of that is in the record if you look in the record again plaintiffs say everybody changed their story nobody knew what was going on to be sure there were some managers a deposition who said I don't remember the specific reasons for this person who I decided to terminate five years ago was there any manager that testified that he he or she reviewed personnel files and and came up with a list of prior attendance issues or performance issues and then you know period was there any testimony like that on any employee I don't remember that specific testimony from everybody but they did generally discuss reviewing the you know reviewing the body of work of these employees and understanding who they were as employees based on what they knew about them just a quick question sure it was the purchase an asset purchase or was it I think you said it was the purchase of an ongoing business right I believe this what's the structure I think it was a stock sale but that's my recollection what's important for this reason is you're talking about a probationary period I don't understand that if it's a purchase of an ongoing business you can't just for ongoing employees how can you say you're all on probation you could definitely say that whether it's an asset purchase or a stock purchase just like I could go you know if I'm a business owner I could say this business is not performing as of today everybody is on a 90-day probationary period we've got to up our game around here and consistent with the nature of at-will employment there would be nothing wrong with that thanks thank you very much your time is expired counsel and you had I think 45 seconds or so thank you your honor I'm gonna try and use that well I just wanted to point the court on the district court erred in rejecting this form of pretext that form of prefect pretext that form of pretext many of which are similar to the pretext shown here I with regard to the sex plus claims I would point the court to the fourth claim for relief which was not dismissed for failure to allege a I would just leave the court with your time it's expired counselor excused we're ready for the next case this morning